UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KG MINING (BALD MOUNTAIN) INC,<br><br>　　　　　　　　　　Plaintiff,<br>　　v.<br>JOSEPH MAKI,<br><br>　　　　　　　　　　Defendant. | Case No. 3:20-cv-00656-MMD-CLB<br><br>ORDER |

**I.   SUMMARY**

Plaintiff KG Mining, Inc. ("Bald Mountain") sued Defendant Joseph Maki for breach of contract. (ECF No. 1 at 3.) Before the Court is Bald Mountain's motion to dismiss (ECF No. 21 ("Motion")) Maki's counterclaims under Federal Rule of Civil Procedure 12(b)(6).[1] (ECF No. 21 at 1.) Because Maki has failed to plead facially plausible counterclaims, and as further explained below, the Court will grant the Motion and will grant Maki leave to amend some of his counterclaims.

**II.   BACKGROUND**

The following facts are adapted from the pleadings. Bald Mountain is a mining company. (ECF No. 1 at 1.) Maki was offered a position with Bald Mountain for an alleged annual base salary of $92,000, along with a signing bonus of $12,196.52 and relocation benefits of $69,588.17. (ECF Nos. 1 at 2, 18 at 9.) Maki allegedly signed an agreement on September 17, 2019, and September 18, 2019, that he would return the signing bonus and relocation benefits, totaling $81,784.69, if he left Bald Mountain within one year. (ECF No. 1 at 2.) Maki allegedly began working for Bald Mountain around October 7, 2019. (ECF No. 18 at 9.) He contends that Bald Mountain eventually

---

[1] Maki filed an opposition to the Motion (ECF Nos. 22, 23), and Bald Mountain filed a reply (ECF No. 24). It appears that ECF No. 22 and ECF No. 23 are duplicate documents.

terminated him around May 14, 2020. (*Id*. at 10.) However, Bald Mountain alleges in its Complaint that Maki resigned and denies that Maki was terminated. (ECF Nos. 1 at 2, 21 at 8). Bald Mountain sent Maki a letter requesting repayment of the signing bonus and relocation expenses on August 14, 2020, because Maki resigned before completing one year of employment. (ECF No. 1 at 3.) Bald Mountain sent Maki another formal demand letter on September 21, 2020. (*Id*.) According to Bald Mountain, Maki has not repaid the $81,784.69. (*Id*.)

Bald Mountain subsequently filed this lawsuit against Maki, alleging breach of contract. (*Id*.) Maki filed an answer and eleven counterclaims against Bald Mountain for (1) luring an employee under false pretenses under NRS § 613.010; (2) negligent hiring, training, supervision, and retention; (3) violation of the Fair Labor Standards Act ("FLSA") for failing to pay minimum and overtime wages; (4) retaliation in violation of FLSA; (5) fraud and fraud in the inducement; (6) tortious discharge; (7) conversion; (8) unlawful lending practices; (9) failure to pay wages under NRS § 608; (10) failure to pay wages upon termination of employment under NRS §§ 608.020-.050, 608.140 and the Nevada Constitution; and (11) unjust enrichment. (ECF No. 18 at 10-21.) Bald Mountain now seeks dismissal of the counterclaims. (ECF No. 21.)

### III.   LEGAL STANDARD

The standard on a motion to dismiss a counterclaim under Rule 12(b)(6) is the same as on a motion to dismiss a plaintiff's complaint. A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a

complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

In *Iqbal*, the Supreme Court of the United States clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 678. Mere recitals of the elements of a cause of action, supported only by conclusory statements, do not suffice. *See id.* Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *See id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *See id.* at 678.

Where the complaint does not permit the Court to infer more than the mere possibility of misconduct, the complaint has "alleged—but it has not show[n]—that the pleader is entitled to relief." *Id*. at 679 (alteration in original) (quotation marks and citation omitted). That is insufficient. When the claims in a complaint have not crossed the line from conceivable to plausible, the complaint must be dismissed. *See Twombly*, 550 U.S. at 570. Dismissal of a complaint without leave to amend is only proper when it is clear the complaint could not be saved by any amendment. *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 871 (9th Cir. 2016); *see also* Fed. R. Civ. P. 15(a)(2) (instructing district courts to "freely give leave" to amend).

**IV.   DISCUSSION**

Bald Mountain argues that none of Maki's counterclaims are plausibly pled, and that the Court should dismiss them all. (ECF No. 21 at 13.) The Court agrees, but finds that some counterclaims may be cured by amendment. The Court first addresses Maki's counterclaims that may be cured by amendment, which includes his fraud counterclaims (counts I, V), negligent hiring/supervision/training/retention (count II), retaliation (count IV), tortious discharge (count VI), unpaid wages (counts III, IX, X), unjust enrichment

(count XI), and conversion (count VII). The Court then examines Maki's counterclaim that may not be cured by amendment, which includes his unlawful lending practices (count VIII) counterclaim. Because Maki has failed to plead facially plausible counterclaims, the Court will grant Defendant's Motion.

### A.     Fraud (Counts I, V)

To start, Maki failed to meet the heightened pleading standard for fraud claims under Federal Rule of Civil Procedure 9(b). Bald Mountain argues that dismissal is proper because Maki failed to identify the hours he was not compensated for, the specific misrepresentations Bald Mountain made to Maki, and the specific parties that made the misrepresentations. (ECF No. 21 at 4, 7.) Maki counters that he did provide the time, place, specific content, and identities of the parties in his counterclaims. (ECF No. 23 at 2-3). The Court agrees with Bald Mountain.

Rule 9(b) provides that when a party alleges fraud, the party must "state with particularity the circumstances constituting fraud." The party must include the "the who, what, when, where, and how of the misconduct charged." *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (citation omitted); *see also Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019) (noting that "the complaint must include an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations") (citations and quotation marks omitted).

Accepting Maki's allegations as true, Maki appears to allege that Bald Mountain represented that the company would properly pay him, but Bald Mountain did not uphold those promises. (ECF No. 18 at 15.) However, Maki failed to provide further details regarding the specific hours or type of work he was *not* compensated for, or Bald Mountain's specific misrepresentations regarding the type and amount of work Maki *would* be compensated for. (*Id*. at 10-11, 14-15.) *See Becerra*, 945 F.3d at 1228; *Depot*, 915 F.3d at 668. It is also unclear *who* actually made these statements—whether it was

a particular agent or employee of Bald Mountain's or language from the provisions within Maki's employment agreement. *See Becerra*, 945 F.3d at 1228.

Moreover, it is unclear *where* or *when* the alleged misconduct occurred, as required by Rule 9(b). *See Becerra*, 945 F.3d at 1228; *Depot*, 915 F.3d at 668. In his response, Maki attempts to clarify that the timing of the misconduct was "at the formation of the employment agreement/offer and during the course and scope of employment until termination on or about May 14, 2020, and for causes of action post-termination." (ECF No. 23 at 2-3.) However, this was not clear or specified in his initial counterclaims, where Maki only alleged that Bald Mountain convinced him to accept the job under false representations—without additional details about whether the statements were made before, during, or after he signed the agreement. (ECF No. 18 at 10, 15.) Maki therefore failed to meet the heightened pleading standard under Rule 9(b), and the Court dismisses his fraud counterclaims (counts I and V) without prejudice, with leave to amend.

B.  **Negligent Hiring, Training, Supervision, and Retention (Count II), Retaliation (Count IV), and Tortious Discharge (Count VI)**

Next, Maki fails to plead facially plausible counterclaims for negligent hiring/training/supervision/retention, retaliation, and tortious discharge. Bald Mountain argues that each counterclaim fails to plead the requisite factual information that would support it. (ECF No. 21 at 5, 7, 8-9.) The Court agrees.

First, Maki vaguely alleges that Bald Mountain had a duty not to hire individuals with a "propensity towards committing unlawful acts" and to adequately train, supervise, and retain its employees. (ECF No. 18 at 11.) He then alleges that Bald Mountain violated this duty by "fail[ing] to supervise, train and hire appropriate personnel which resulted in damages." (*Id*. at 11-12). Maki's bare recitals of the elements for negligence, supported only by conclusory statements, are insufficient to defeat a motion to dismiss. *See Iqbal*, 556 U.S. at 678. For instance, Maki fails to specify the actions by Bald Mountain's employees or agents that injured him. (ECF No. 18 at 11-12.) Maki does not

provide any details regarding *how* Bald Mountain failed to supervise or train its employees. (*Id.*) Also, for a claim like negligent hiring, Maki does not include any factual allegations that Bald Mountain failed to conduct a reasonable background check or hired an employee even though Bald Mountain knew or should have known of the employee's "dangerous propensities." (*Id.*) *See Burnett v. C.B.A. Sec. Serv.*, 820 P.2d 750, 752 (Nev. 1991) (citation omitted); *Hall v. SSF, Inc.*, 930 P.2d 94, 98 (Nev. 1996) (citation omitted). The Court therefore dismisses Maki's negligent hiring/training/supervision/retention counterclaim (count II) without prejudice, with leave to amend, because Maki's conclusory statements do not rise above the speculative level or cross the line from conceivable to plausible. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570.

Second, Maki argues that Bald Mountain retaliated against him by filing this lawsuit, in violation of FLSA. (ECF No. 18 at 14.) However, Maki does not include any other details to support his allegation—aside from the single fact[2] that Bald Mountain filed this lawsuit. (*Id.*) Thus, Maki has not provided sufficient factual matter to "state a claim to relief that is plausible on its face" for retaliation under FLSA. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). The Court therefore dismisses Maki's retaliation counterclaim, with leave to amend, because Maki has only alleged, but has not *shown*, that he is entitled to relief. *See Iqbal*, 556 U.S. at 678-79 (citation omitted).

Third, Maki argues that Bald Mountain "constructively discharged" him for reasons that violate Nevada's public policy, which protects employees from employer retaliation. (ECF No. 18 at 15.) A tortious constructive discharge claim requires proof that "(1) the employee's resignation was induced by action and conditions that are

---

[2] In his response, Maki attempts to supplement his retaliation argument by adding that he "complained and demanded wages and wage records" from Bald Mountain, but "such requests have been denied or otherwise unanswered." (ECF No. 23 at 4.) However, it is unclear how this particular allegation is relevant to Maki's contention that Bald Mountain retaliated against him by filing this lawsuit. (ECF No. 18 at 14.) Moreover, it is unclear whether Maki made these record requests before or after the lawsuit was filed. (ECF No. 23 at 4.) Thus, this additional detail from Maki's response does not change the Court's conclusion that Maki's retaliation counterclaim should be dismissed without prejudice.

violative of public policy; (2) a reasonable person in the employee's position at the time of resignation would have also resigned because of the aggravated and intolerable employment actions and conditions; (3) the employer had actual or constructive knowledge of the intolerable actions and conditions and their impact on the employee; and (4) the situation could have been remedied." *Dillard Dep't Stores, Inc. v. Beckwith*, 989 P.2d 882, 885 (Nev. 1999) (citations omitted).

The Court finds that Maki has not sufficiently pled his tortious discharge counterclaim. The only support Maki provides for his counterclaim is that Bald Mountain made him execute unlawful agreements as a condition of his employment while "hiding the true intent of such documents," and suggests that Bald Mountain retaliated against him. (ECF No. 18 at 15-16.) However, Maki failed to specify *how* Bald Mountain hid its true intent, *what* Bald Mountain's true intentions were, or clarify the connection between Bald Mountain's concealment of its true intentions and the company's retaliation against him—which is the basis for his tortious discharge counterclaim. (*Id.*)

Moreover, Maki failed to provide sufficient facts to support the elements for tortious discharge. For instance, Maki failed to include details about the retaliatory or aggravated actions that would lead a reasonable person in Maki's position to resign; that Bald Mountain had actual and constructive knowledge of the intolerable employment conditions and their impact on Maki; and that the situation could have been remedied. *See Dillard*, 989 P.2d at 885. The Court therefore dismisses Maki's tortious discharge counterclaim (count VI) without prejudice and with leave to amend, because Maki failed to provide sufficient facts to state a facially plausibly counterclaim. *See Iqbal*, 556 U.S. at 678.

### C. Unpaid Wages (Counts III, IX, X) and Unjust Enrichment (Count XI)

The Court next addresses Maki's unpaid wages counterclaims under FLSA, the Nevada statutes, and the Nevada Constitution, and Maki's unjust enrichment counterclaim. Because, as above, the Court finds these counterclaims lack the requisite facts, the Court will dismiss them and will grant Maki leave to amend.

To start, Maki argues that Bald Mountain failed to compensate him "for minimum wage and/or overtime for each hour worked" and mileage expenses, in violation of FLSA. (ECF No. 18 at 12-13.) However, Maki fails to include any details regarding the specific trips he was not compensated for or the amount he is owed for mileage expenses. (*Id*. at 13.) Second, Maki fails to allege that he worked more than 40 hours in a workweek for his unpaid overtime claim. (*Id*. at 12-13.) The Ninth Circuit has explicitly held that "to survive a motion to dismiss, [the party] asserting a FLSA claim to overtime payments must allege that [he] worked more than 40 hours in a given workweek without being compensated for the overtime hours worked during that workweek." *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638, 644-45 (9th Cir. 2014) (citations omitted); *see also Boyack v. Regis Corp.*, 812 F. App'x 428, 430-31 (9th Cir. 2020).

Here, Maki merely alleges that he was not paid overtime and refers the Court to his redacted bank records but fails to provide any explanation for the bank records, or allege facts showing that he was entitled to and denied minimum wage for a given workweek, as required by *Landers.* (ECF Nos. 18 at 13, 29.) *See* 771 F.3d at 645. Because Maki fails to provide sufficient factual allegations to state a facially plausible counterclaim (count III) for unpaid wages under FLSA, the Court dismisses the counterclaim without prejudice and with leave to amend. *See Iqbal*, 556 U.S. at 678.

Maki's state-law unpaid wages counterclaims (counts IX and X) are also deficient. Maki fails to allege the specific hours he was not paid, the amount of wages owed, or that he worked more than 40 hours in a scheduled workweek or more than 8 hours in a workday—all facts necessary to resolve his Nevada state-law claims. *See* NRS §§ 608.016, 686.018; *Iqbal*, 556 U.S. at 678. Maki further alleges that Bald Mountain maintains "a policy and/or practice of not paying its employees for time it deems non-compensable," but fails to provide details about the particular activities/labor Bald Mountain considers compensable versus non-compensable under its policy. (ECF No. 18 at 19.) These allegations are conclusory. The Court therefore dismisses counts IX and X without prejudice and with leave to amend.

Finally, Maki's unjust enrichment counterclaim must also be dismissed. Maki alleges that he worked "numerous hours without proper compensation, to the benefit and enrichment" of Bald Mountain and that Bald Mountain is going to be further enriched by "forcing [Maki] to pay [back] $81,784.69.00." (*Id*. at 21.) Under Nevada law, unjust enrichment occurs when "the plaintiff confers a benefit on the defendant, the defendant appreciates such benefit, and there is acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof." *Korte Constr. Co. v. State on Relation of Bd. of Regents of Nev. Sys. of Higher Educ.*, 492 P.3d 540, 543 (Nev. 2021) (citation omitted). Maki seems to suggest that the benefit or advantage conferred to Bald Mountain was his labor, and that Bald Mountain did not pay him for his labor, despite benefiting from Maki's "time as an employee." (ECF No. 18 at 21.) *See Korte*, 492 P.3d at 543. However, as explained above, Maki fails to identify which hours and activities he was not compensated for, the labor he was not compensated for, or the amount of compensation is he owed. (*Id*.) Because Maki fails to allege sufficient facts, the Court dismisses Maki's unjust enrichment counterclaim (count XI) without prejudice and with leave to amend. *See Iqbal*, 556 U.S. at 678.

### D.   Conversion (Count VII)

Maki argues that, by demanding repayment of the $81,784.69, Bald Mountain seeks to unlawfully deduct from his salary of $92,000.[3] (ECF Nos. 18 at 16-17, 23 at 4.) Bald Mountain contends that the counterclaim should be dismissed because the company allegedly paid Maki the $81,784.69, in addition to his base salary, and never deducted the amount from his base salary. (ECF Nos. 21 at 9-10, 24 at 4.) The Court agrees that dismissal is proper.

Under Nevada law, conversion is "a distinct act of dominion wrongfully exerted over personal property in denial of, or inconsistent with, title or rights therein or in

---

[3] The Court notes that Maki's arguments are, at times, difficult to follow and require the Court to construe them as stated herein.

derogation, exclusion or defiance of such rights." *Edwards v. Emperor's Garden Rest.*, 130 P.3d 1280, 1287 (Nev. 2006) (citation omitted). "[L]iability for conversion is predicated upon general intent, which does not require wrongful intent and is not excused by care, good faith, or lack of knowledge." *Winchell v. Schiff*, 193 P.3d 946, 950 (Nev. 2008) (citation and quotation marks omitted). "[C]onversion generally is limited to those severe, major, and important interferences with the right to control personal property that justify requiring the actor to pay the property's full value." *Golden Rd. Motor Inn, Inc. v. Islam*, 376 P.3d 151, 160 (Nev. 2016).

Maki appears to argue that Bald Mountain is liable for conversion by "failing to pay [due] wages" and attempting to "deduct" the $81,784.69 from his salary. (ECF Nos. 18 at 16, 23 at 4.) However, as stated above, it is unclear which wages Bald Mountain failed to pay or that Maki is owed. Moreover, Maki admits that Bald Mountain promised him an annual base salary of $92,000. (ECF No. 18 at 9.) However, it is unclear whether, under the agreement, the $81,784.69 was *taken out* of his $92,000 base salary or paid to Maki *in addition* to his annual base salary.[4] (*Id*. at 16-17.) Notably, Maki does not allege that the $81,784.69 was *a part* of the $92,000 base salary. (ECF Nos. 18 at 16-17, 23 at 4.) Maki, instead, repeatedly refers to the $81,784.69 as an "unlawful loan" without any further elaboration or clarification. (ECF No. 18 at 17.) Maki's fragmentary and conclusory allegations do not yield a facially plausible counterclaim for conversion. *See Iqbal*, 556 U.S. at 678. The Court therefore dismisses Maki's conversion counterclaim (count VII) without prejudice, and with leave to amend, so Maki can clarify the aforementioned issues.

### E. Unlawful Lending Practices (Count VIII)

Finally, Maki characterizes the $81,784.69 as a "loan" from Bald Mountain and alleges that Bald Mountain violated NRS § 675 and the Truth in Lending Act (TILA) by

---

[4] Bald Mountain has maintained throughout this lawsuit that repayment of the $81,784.69 would not be deducted from Maki's $92,000 base salary and would, instead, be a reimbursement of the signing bonus and relocation benefits, paid to Maki *in addition* to his base salary. (ECF Nos. 1 at 2, 24 at 4.)

dealing with loans without proper licensing, failing to define the loan's purpose to Maki, and forcing Maki and other employees into loan agreements as a condition of their employment. (ECF No. 18 at 17-18.) Bald Mountain denies that the $81,784.69 was a loan and argues that dismissal is proper because (1) NRS § 675 does not provide for a private civil cause of action, and (2) Maki's TILA counterclaim is barred by the statute of limitations. (ECF No. 21 at 10-11.) The Court agrees with Bald Mountain.

Maki fails to state a claim for unlawful lending. Setting aside the conclusory allegations that his relocation bonus was a "loan," penalties for unlicensed dealing in loans are limited to criminal charges and an administrative fee imposed by the Nevada Commissioner. *See* NRS §§ 675.470, 675.490. The statute does not authorize a private civil right of action, and Maki therefore cannot bring this counterclaim. Next, 15 U.S.C. § 1640(e) clearly states that any civil action under TILA "may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation." The statute of limitations for TILA "begins to run 'at the time the loan documents were signed,'" which Maki admits was September 17, 2019. (ECF No. 18 at 2.) *Townsend v. Wells Fargo Bank, N.A.*, 831 F. App'x 338, 339 (9th Cir. 2020) (citing *Meyer v. Ameriquest Mortg., Co.*, 342 F.3d 899, 902 (9th Cir. 2003)). Thus, Maki's TILA counterclaim was filed well past the one-year statute of limitations and Maki fails to allege sufficient facts to demonstrate that equitable tolling applies. *See Townsend*, 831 F. App'x at 339. Because Maki's TILA counterclaim is barred by the statute of limitations and NRS § 675 does not allow for a private civil cause of action, the Court dismisses Maki's unlawful lending counterclaim (count VIII) with prejudice, as amendment would be futile.

## V. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Plaintiff Bald Mountain's Motion to Dismiss (ECF No. 21) Defendant Joseph Maki's counterclaims (ECF No. 18) is granted.

It is further ordered Maki's fraud (counts I, V), negligent hiring, training, supervision, and retention (count II), unpaid wages (counts III, IX, X), retaliation (count IV), tortious discharge (count VI), unjust enrichment (count XI), and conversion (count VII) counterclaims are dismissed without prejudice, and with leave to amend.

It is further ordered that Maki's unlawful lending practices (count VIII) counterclaim is dismissed with prejudice.

It is further ordered that, if Maki decides to file an amended counterclaim—to the extent he is able to cure the deficiencies discussed herein—he must do so within 30 days of the date of entry of this order. Maki's failure to file an amended counterclaim within 30 days will result in dismissal of the remaining part of his counterclaims with prejudice.

DATED THIS 4th Day of March 2022.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE